IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>EMMITT MARTIN III, TADARRIUS BEAN, DEMETRIUS HALEY, DESMOND MILLS, JR., AND JUSTIN SMITH,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   No. 2:23-cr-20191-SHL<br>)<br>)<br>)<br>)<br>) |

**ORDER GRANTING MOTIONS FOR NEW TRIAL**

Before the Court are motions for a new trial filed by Defendants Taddarius Bean, Demetrius Haley, and Justin Smith. Haley filed his motion on June 17, 2025. (ECF No. 861.) Smith filed his motion the same day (ECF No. 863),[1] and subsequently joined Haley's filing (ECF No. 865). Bean filed his motion on June 19, 2025, in which he alternatively asked for leave to file an interlocutory appeal. (ECF No. 872.) Smith joined Bean's filing the same day. (ECF No. 873.) The Government filed an omnibus response to the motions on July 21, 2025, asserting that each should be denied "because the defendants have failed to carry their burden of showing that the interest of justice requires a new trial." (ECF No. 904 at PageID 16423.) Haley

---

[1] Smith's Motion notes that he had previously sought similar relief in his Renewed and Supplemental Motion for Acquittal Pursuant to FRCrP 29 or in the Alternative Motion for New Trial Pursuant to FRCrP 33 (ECF No. 660), which was denied (ECF No. 726). Smith's motion also sought to unseal certain records in this case and to hold evidentiary hearings. The portion of his motion seeking to unseal documents is being addressed in a separate order, and his motion for evidentiary hearings is addressed infra. On August 13, 2025, Smith also filed supplemental legal authority in further support of his motion. (ECF No. 917.) Smith referenced and attached the decision from United States v. Mitchell Antar, 53 F.3d 568 (3rd Cir. 1995), to his supplementation.

filed a reply to the response on July 23, 2025 (ECF No. 907),[2] which Smith joined the same day (ECF No. 908). Bean filed a reply on July 28, 2025 (ECF No. 915), which Smith joined the next day (ECF No. 916).

Defendants assert that new trials are warranted based on alleged post-trial ex parte communications that District Judge Mark S. Norris had with members of the United States Attorney's Office for the Western District of Tennessee (the "U.S. Attorney") and the FBI's Memphis office. They cite to numerous rulings made by Judge Norris, who presided over the case from its inception through the trial, as evidence that he was biased against them throughout the proceedings.

The record demonstrates that Judge Norris' decisions throughout this case were deliberate and searching, and the undersigned has not found a single example among the many allegedly biased decisions cited by Defendants that was inconsistent with the law. Nevertheless, for the reasons explained in more detail below, a new trial is necessary, as "[t]he Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, justice must satisfy the appearance of justice.'" Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825 (1986) (quoting In re Murchison, 349 U.S. 133, 136 (1955)).

Therefore, the motions for new trial are **GRANTED**.

## BACKGROUND

Bean, Haley, and Smith, along with Defendants Emmitt Martin III and Desmond Mills, Jr., were charged in a four-count indictment relating to injuries sustained by, and ultimately the

---

[2] Haley filed a Sealed Errata Regarding R. 907 the same day of the filing, clarifying the relief he was seeking. (ECF No. 909.)

death of, Tyre Nichols, who was arrested after a traffic stop in Memphis on January 7, 2023. (ECF No. 2.) Defendants were detectives with the Memphis Police Department at the time of Nichols' arrest. (Id. at PageID 8.)

Mills pleaded guilty to the indictment on November 2, 2023 (ECF No. 92), and Martin did so on August 23, 2024 (ECF No. 500). Bean, Haley, and Smith proceeded to a jury trial, which began on September 9, 2024. (ECF No. 561.) On October 3, 2024, the jury returned verdicts, finding Bean and Smith guilty on the obstruction of justice count, and Haley guilty on all four counts.[3] (ECF No. 627.) All of the Defendants were set to be sentenced the week of June 16, 2025, beginning on the Monday of that week. (See ECF Nos. 818–822.) Judge Norris was to handle the sentencings.

On the Friday before the first sentencing hearing, the U.S. Attorney filed a Notice of Disclosure of Oral Communications (the "Notice"). (ECF No. 846.) In the Notice, the U.S. Attorney described, by way of background, an incident involving one of Judge Norris' law clerks that occurred on October 8, 2024, just days after the verdict. The law clerk, who had returned to Memphis to assist with the trial in this matter, "was the victim of an auto theft, especially aggravated burglary and an attempted murder" and "[d]uring the commission of the crimes, the clerk suffered a gunshot wound to the chest." (Id. at PageID 15952.) The victim was staying at the home of another law clerk who had previously worked for Judge Norris on this case. (Id.)

The Notice stated that Memphis Police Department investigators believed that a group of juveniles committed the attack, and Judge Norris wanted those responsible to be held accountable. Judge Norris also expressed concern about the clerk's well-being, and "evidenced

---

[3] Haley was found guilty of the lesser charges of Counts 1 and 2. (ECF No. 627 at PageID 9514.)

3

reasonable frustration with the police investigation." (Id.) Presumably following their own investigation, federal investigators from the United States Marshals Service and the FBI "concluded that there was no federal nexus for the shooting," a conclusion shared by the U.S. Attorney. (Id.) Three members of the U.S. Attorney's Office and the Assistant Special Agent in Charge of the FBI's Memphis office scheduled a meeting with Judge Norris for May 30, 2025, to "explain why investigators determined there was no federal nexus and why this Office would not be charging any federal crimes against any of the suspects in relation to the shooting of the clerk." (Id.) Thus, the meeting, requested by the prosecutors and law enforcement, was related to the potential federal prosecution of the suspects alleged to have shot Judge Norris' law clerk.

According to the U.S. Attorney, during that meeting, presumably related to the question of a "federal nexus," "Judge Norris indicated that his theory or belief was that at least one of the defendants in [this] case was in a gang and that the gang was responsible for the shooting of his clerk." (Id. at PageID 15952–53.) The U.S. Attorney stated that Judge Norris told the meeting's attendees that he believed that the intended target of the shooting was the former law clerk who had worked on the case, and who had been seen by one or more of the Defendants during the trial. (Id. at PageID 15953.) An Assistant U.S. Attorney who attended the May 30, 2025 meeting also contended that she remembered that, shortly after the law clerk was shot on October 8, 2024, Judge Norris informed her that "he could not meet with any member of the Memphis Police Department to give a statement regarding the shooting of his clerk, as MPD is 'infiltrated to the top with gang members.'" (Id.)[4]

---

[4] Haley suggests that the Notice "is unrebutted, unchallenged, and uncontested," which "leads inexorably to the conclusion that, although a meager summary, it is accurate." (ECF No. 861 at PageID 16019.) Indeed, the Court notes that this ruling is based on the unrebutted description of the conversations as presented. However, the fact that Judge Norris has not issued a rebuttal is not surprising and is not a verification of the accuracy or completeness of the Notice,

On June 13, 2025, Judge Norris recused himself from the case. (ECF No. 854.) The case was assigned to the undersigned the same day, and the sentencing hearings were continued. (ECF No. 855.) The sentencings have since been reset for the week of December 15, 2025. (ECF No. 912.)

Bean, Haley, and Smith filed their motions seeking a new trial based on the information contained in the Notice. The motions argue that the ex parte communications described in the Notice reveal that Judge Norris was biased against the Defendants, and that, by presiding over the case, he violated Defendants' rights to due process and, alternatively, that he should have recused himself under 28 U.S.C. § 455.

Smith asserts that "[t]here was not one suggestion or one hint in the federal discovery process or the federal trial that any defendant or any member of the Memphis Police Department was in any way affiliated with an illegal street gang either through membership or relationship, nor was there any suggestion in discovery or at trial that members of the law enforcement agency would support or direct a criminal act such as attempted murder upon a member of the trial judge's staff." (ECF No. 863 at PageID 16033.) Bean similarly argues that "[t]he record is completely void of any reference to any of the officers being members of any street gang or any other illegal organization," and "[t]he record in this case is entirely void of any expressed desire to see retaliation for any outcome or proceeding in this matter." (ECF No. 900 at PageID 16379–80.) Haley contends that "Judge Norris made the gang statements on at least two occasions, demonstrating that it is a firmly held belief, not an off-hand remark." (ECF No. 907 at PageID

---

or the context in which he made any statements. For Judge Norris to do otherwise would arguably violate the Judicial Code of Conduct. <u>See</u> Code of Conduct for United States Judges, Canon 3A(6) (2019) ("A judge should not make public comment on the merits of a matter pending or impending in any court.").

16450.)  For its part, the Government acknowledges that "[n]either party argued or implied that the defendants or MPD officers generally had any criminal gang involvement."  (ECF No. 904 at PageID 16428.)

Smith asserts that concluding that one or more of the Defendants was affiliated with a street gang, or that the MPD was infiltrated to the top with gang members, would not be the sort of opinion that Judge Norris could have arrived at based on the evidence presented at trial and instead reflects a "deep[-seated] bias against the defendants and the Memphis Police Department."  (ECF No. 863 at PageID 16033.)  Similarly, Haley argues that "[a] new trial is necessary to prevent a manifest injustice, provide [him] due process and the fair trial he is constitutionally entitled to receive, and provide the public a fair, open proceeding."  (ECF No. 861 at PageID 16020.)[5]  Bean echoes these arguments, asserting that "the content of the ex parte communication between the Court and members of the government has without question violated Defendant Bean's fundamental constitutional rights," as "[t]he content of the ex parte communication shows the original trial judge harbored deep[-seated] bias against Defendant Bean and the City of Memphis Police Department."  (ECF No. 872 at PageID 16145.)

Ultimately, Defendants argue that, given Judge Norris' ex parte statements, it would be unreasonable to suggest that he was not biased against them before their trial began.  (See ECF

---

[5] Haley alternatively seeks "the opportunity to obtain full details of all related ex parte communications Judge Norris made to the prosecution team/U.S. Attorney's Office/Department of Justice, including U.S. Marshal's Service prior to conducting an evidentiary hearing for him to establish that Judge Norris held an actual bias or prejudice during the pendency of this case." (ECF No. 861 at PageID 16022.)  Haley, along with the other Defendants, including Martin, also sought the same types of discovery in separate filings and motions.  (See, e.g., ECF Nos. 863, 875, 879, 880, 882, 883, 884, 888, 889, 891, 892, 897, 898, 899, and 910.)  The Government addressed the motions on July 7, 2025.  (ECF No. 896.)  Bean asserts that he "is not requesting additional discovery at this time."  (ECF No. 900 at PageID 16381.)  Because this Order grants a new trial, and Defendants seek discovery to support their claims that they are entitled to a new trial, the motions seeking discovery are **DENIED AS MOOT**.

6

No. 861 at PageID 16019 ("Based upon the chronology of his ex parte statements to management in the U.S. Attorney's Office, it is simply illogical to surmise that Judge Norris didn't have the opinion that the Memphis Police Department is 'gang infested to the top' during this trial."); ECF No. 863 at PageID 16029 ("Rulings by the original trial judge . . . were so erroneous and so basic that they could have only been a result of the previously undisclosed biases that the trial judge maintained against the defendants.").)

## APPLICABLE LAW

Upon a "defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 "does not define 'interest[] of justice' and the courts have had little success in trying to generalize its meaning." United States v. Munoz, 605 F.3d 359, 373 (6th Cir. 2010) (quoting United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir. 1989)). After a verdict, a "successor judge may grant a new trial if satisfied that: (A) a judge other than the one who presided at the trial cannot perform the post-trial duties; or (B) a new trial is necessary for some other reason." Fed. R. Crim. P. 25(b)(2).

All parties to litigation are entitled to due process, which "require[s] not only an absence of actual bias, but an absence of even the appearance of judicial bias." Railey v. Webb, 540 F.3d 393, 399 (6th Cir. 2008) (quoting Anderson v. Sheppard, 856 F.2d 741, 746 (6th Cir. 1988)). "A judge can and should be disqualified for 'bias, a likelihood of bias, or even an appearance of bias.'" Id. at 399–400 (citation modified). "To establish an enforceable and workable framework, the Court's precedents apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present." Williams v. Pennsylvania, 579 U.S. 1, 8 (2016).

Ultimately, in criminal cases, "[d]ue process entitles [a defendant] to 'a proceeding in which he may present his case with assurance' that no member of the court is 'predisposed to find against him.'" Id. at 16 (quoting Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980)); see also Johnson v. Parris, No. 1:18-CV-204, 2021 WL 1232774, at *47 (E.D. Tenn. Apr. 1, 2021) ("The Supreme Court therefore has dictated that the relevant question in examining a due process claim based on judicial bias is whether 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" (quoting Rippo v. Baker, 580 U.S. 285, 287 (2017))); Matter of Hatcher, 150 F.3d 631, 637 (7th Cir. 1998) (explaining that, in evaluating motions for recusal under § 455, "although the court tries to make an external reference to the reasonable person, it is essential to hold in mind that these outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be").

As for whether a judge should preside over a matter, the Due Process Clause "demarks only the outer boundaries of judicial disqualifications." United States v. Liggins, 76 F.4th 500, 505 (6th Cir. 2023) (quoting Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 889 (2009)). "Recusal 'questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar.'" Id. (quoting Bracy v. Gramley, 520 U.S. 899, 904 (1997)). To that end, 28 U.S.C. § 455(a) provides several bases for recusal and, most fundamentally, provides that judges shall not preside over "any proceeding in which [their] impartiality might reasonably be questioned." The recusal analysis applies here to consider whether there is an appearance of bias supporting the granting of a new trial.

## ANALYSIS

The Supreme Court "has declined to find an unconstitutional risk of bias in all but a few narrow circumstances." Johnson v. Morales, 946 F.3d 911, 918 n.3 (6th Cir. 2020). The facts in

8

this case bear little similarity to the cases in which the courts have determined recusal was necessary based on the probability of bias being too high to be constitutionally tolerable.[6] Those cases typically deal with two types of circumstances: where the "judge has a direct, personal, substantial pecuniary interest in reaching a particular conclusion" or "certain contempt cases, such as those in which the judge becomes personally embroiled with the contemnor." Railey, 540 F.3d at 400 (citation modified); see also, e.g., Williams, 579 U.S. at 16 ("Where a judge has had an earlier significant, personal involvement as a prosecutor in a critical decision in the defendant's case, the risk of actual bias in the judicial proceeding rises to an unconstitutional level."); Caperton, 556 U.S. at 884 ("[T]here is a serious risk of actual bias—based on objective and reasonable perceptions—when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent."); Mayberry v. Pennsylvania, 400 U.S. 455, 466 (1971) ("[B]y reason of the Due Process Clause of the Fourteenth Amendment a defendant in criminal contempt proceedings should be given a public trial before a judge other than the one reviled by the contemnor.").

As the Supreme Court's recusal cases illustrate, such cases typically deal with "extreme facts that create[] an unconstitutional probability of bias that 'cannot be defined with precision.'" Caperton, 556 U.S. at 887 (quoting Lavoie, 475 U.S. at 822). The facts in this case, including its high-profile nature, the shooting of Judge Norris' law clerk shortly after the trial's conclusion,

---

[6] Although the briefing on the new trial motions focuses largely on whether Judge Norris should have recused himself from these proceedings well before he did under 28 U.S.C. § 455, the analysis herein focuses primarily on the arguments related to Defendants' rights under the Due Process Clause.

9

and the Judge's subsequent meeting about the investigation into the shooting, although quite different than the cases described, qualify as an extreme set of facts.

Against this backdrop, however, if the Court's consideration of the motions were based solely on the decisions Judge Norris made leading up to and during the trial of this matter, then a new trial would be unnecessary. Not only do "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," Liteky v. United States, 510 U.S. 540, 555 (1994), a review of Judge Norris' decisions throughout these proceedings reveals that they were sound, fair, and grounded firmly in the law.[7] If the Court were evaluating the motions for a new trial based solely on a cold reading of the record, it would likely find that one is not necessary.

However, the opposite conclusion is necessary when the Court applies the requisite objective standard to the facts before it. After all, "the Due Process Clause may sometimes demand recusal even when a judge 'ha[s] no actual bias.'" Rippo, 580 U.S. at 287 (quoting Lavoie, 475 U.S. at 825). What is required is "not only an absence of actual bias, but an absence of even the appearance of judicial bias." Anderson, 856 F.2d at 746. "Time and again this court has said that justice must not only be done but must manifestly be seen to be done." Id. (quoting Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 172 n.19 (1951) (Frankfurter, J.,

---

[7] Similarly, as the Government points out, if the suggestion was that Judge Norris developed negative beliefs about the Defendants during the course of the trial, that alone would not warrant recusal or a new trial, as "[t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill[-]disposed towards the defendant, who has been shown to be a thoroughly reprehensible person." Id. at 550–51. That "judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task." Id. at 551. Ultimately, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. But the thrust of Defendants' arguments is not that Judge Norris' opinions were acquired during the course of the proceedings.

concurring)).  Because the risk of bias here is too high to be constitutionally tolerable, and because "[j]udicial bias is structural error, not susceptible to . . . harmless error analysis[,]" Railey, 540 F.3d at 399 (citing Washington v. Recuenco, 548 U.S. 212, 218 n.2 (2006)), a new trial is necessary.  See also Liggins, 76 F.4th at 505 ("Because '[b]oth the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself,' an unconstitutional failure to recuse is structural error and thus not amenable to harmless-error review." (quoting Williams, 579 U.S. at 16)).

Therefore, consistent with the foregoing and because a new trial would serve the interest of justice, the motions for new trial are **GRANTED**.  A status conference in this matter has been set for Thursday, September 25, 2025 at 2:00 p.m.  Given that the previous trial resulted in some not guilty verdicts and some guilty verdicts on lesser charges, the Parties are **ORDERED** to submit, by Monday, September 15, 2025, their positions on what is to be tried.

**IT IS SO ORDERED,** this 28th day of August, 2025.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
CHIEF UNITED STATES DISTRICT JUDGE

11